**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

PERSISTENT CAPITAL MANAGEMENT, LLC,

        Plaintiff,

v.

WHITE OAK STRATEGIC FUND II, L.P.,
WHITE OAK GLOBAL ADVISORS, LLC and
WHITE OAK PARTNERS, LLC

        Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Persistent Capital Management, LLC, by counsel, for its complaint against Defendants White Oak Strategic Fund II, L.P., White Oak Global Advisors, LLC, and White Oak Partners, LLC, alleges as follows:

**PARTIES JURISDICTION AND VENUE**

1. Plaintiff Persistent Capital Management, LLC ("PCM") is a limited liability company formed under the laws of the Federation of Saint Kitts and Nevis and having its principal place of business at Hunkins Waterfront Plaza, PO Box 556, Charlestown, Nevis 00000 and a registered office in Colorado located at 1470 Walnut Street, Suite 201, Boulder, Colorado 80302. The sole member of PCM is a citizen of the Cook Islands. PCM is properly registered to do business in the State of Colorado.

2. Defendant White Oak Strategic Fund II, L.P. ("Fund") is a limited partnership formed under the laws of the State of Delaware and having its principal place of business at 88

Kearny St., 4th Fl., San Francisco, CA 94108.  Upon information and belief, none of the members of Strategic Fund are citizens of the State of Colorado.

3. Defendant White Oak Global Advisors, LLC ("Global Advisors") is a limited liability company formed under the laws of the State of Delaware and having its principal place of business at 88 Kearny St., 4th Fl., San Francisco, CA 94108.  Upon information and belief, none of the members of Global Advisors are citizens of the State of Colorado.

4. Defendant White Oak Partners, LLC ("Partners") is a limited liability company formed under the laws of the State of Delaware and having its principal place of business at 88 Kearny St., 4th Fl., San Francisco, CA 94108.  Upon information and belief, none of the partners of Partners are citizens of the State of Colorado.

5. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1).  There is complete diversity of citizenship between PCM on the one hand and Strategic Fund, Global Advisors, and Partners on the other hand.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and because the parties to this case have a contractual choice of venue clause stating, in relevant part, that "any claim, action or proceeding based on, arising out of, or in connection with, this Agreement shall be brought only in the U.S. federal court located in Denver, Colorado."

7. Strategic Fund, Global Advisors, and Partners are subject to personal jurisdiction in the State of Colorado and in this judicial district because they transacted business and/or

engaged in tortious conduct within the State of Colorado within the meaning of the Colorado Long Arm Statute.

## FACTUAL ALLEGATIONS

### An Investment Opportunity Is Presented To Persistent Capital Management

8. PCM is in the business of managing investments.

9. In 2010, PCM served as a consultant to defendant Global Advisors with respect to a steel plant investment in Canada.

10. Subsequently, in late 2010 or early 2011, PCM was approached by Global Advisors for a "favor." Global Advisors needed some funding for one of its existing funds and looked to PCM for assistance based on their past working relationship.

### PCM Purchases A Limited Partner Interest In The Fund

11. On or about April 1, 2011, PCM purchased a $3,000,000 limited partner interest in the Fund.

12. The Fund is a limited partnership established for the "purpose of investing through White Oak Strategic Master Fund II, L.P., a Cayman Islands exempted limited partnership . . . in [various registered and unregistered securities in United States and non-United States entities] and engaging in all activities and transactions as the General Partner may deem necessary or advisable in connection therewith."

13. Global Advisors serves as the investment manager for the Fund. Partners serves as the general partner of the Fund.

14. In connection with PCM's purchase of a limited partner interest, Defendants issued a Subscription Agreement, Confidential Offering Memorandum, Prospective Investor

Questionnaire, Risk Mitigation Policies and Procedures, a Limited Partnership Agreement and an Amended and Restated Limited Partnership Agreement. Defendants did not provide a form ADV.

## The Side Letter Agreement

15. Desiring greater protection and liquidity than the Amended and Restated Limited Partnership Agreement would provide, PCM asked for and the parties entered into an Agreement Regarding White Oak Strategic Fund II, L.P. ("Side Letter Agreement") prior to purchasing PCM's $3,000,000 limited partner interest in the Fund.

16. The Side Letter Agreement expressly altered the parties' withdrawal requirements. The Side Letter Agreement states:

> Notwithstanding anything to the contrary in the LP Agreement, Offering Memorandum or Subscription Agreement, and any other document or writing (including electronic messages) relating to Investor's purchase of the LP interest, (i) the 24-Month Lock-Up Period for the LP Interest shall end on the last day of the 6-month period (rather than the 24- month period) following the Closing Date applicable to the LP interest; (ii) the General Partner shall not have the right to suspend a withdrawal request by Investor for any reason including those referenced in Section 5.07 of the LP Agreement; (iii) a withdrawal request in respect of the LP Interest shall require 60 rather than 180 calendar days' notice and may be given prior to the end of such 6-month period; and (iv) in the event that the Fund is unable to distribute the withdrawal payment on the Withdrawal Date, the Fund shall distribute the withdrawal proceeds as soon as possible and in any event within 90-days after the Withdrawal Date (and in that event, the withdrawal shall be deemed effective immediately following the Withdrawal Date and none of the withdrawal request shall be at risk to the Fund's performance),

Side Letter Agreement, ¶1.

17. The Side Letter Agreement further provides:

> At any time, Investor shall have the right to request return of its investment (the "Redemption Request"). In that instance, the Fund, the

> Investment Manager, and the General Partner shall have sixty days to provide Investor confirmation that it will pay Investor the full amount of its investment, or provide an alternative solution to Investor, which solution must be acceptable to Investor in its discretion. The Fund, the Investment Manager, and the General Partner shall have one hundred and fifty days form [sic] the date of the Redemption Request to pay Investor the full amount of its investment, or otherwise perform the alternate solution that was agreed to by Investor.

Side Letter Agreement, ¶ 5(d)

18. The Side Letter Agreement also provides certain indemnification in favor of PCM, stating:

> The Fund, the General Partner and the Investment Manager (the "Indemnifying Parties") jointly and severally covenant to indemnify, defend and hold Investor and its managers ,members, and agents (the "Indemnified Investor Parties") harmless from all losses, damages, liabilities, claims, lawsuits, expenses, attorney fees, and costs incurred by the Indemnified Investor Parties as a result of any breach by the Indemnifying Parties of the representations and warranties in this Section 5 or any of the provisions of this Agreement.

Side Letter Agreement, ¶ 5(e).

### The Fund Suffers A Series Of Mark Downs And Liquidity Problems

19. On or about December 23, 2011, PCM was put on notice that the Fund suffered a significant mark down.

20. After learning about the mark down, PCM made specific inquiries to Defendants regarding the mark down. Defendants assured PCM that there were no problems with the Fund's liquidity, the mark down was simply the result of a cash flow and timing issue, and the Fund planned to shore up the value of the its underlying investments. In reliance on these assurances, PCM took no action in response to this mark down.

21.     On or about February 8, 2012, PCM was put on notice that the Fund had suffered a second significant mark down. This time, Defendants, in response to PCM's inquiries and request for assurances, claimed that the mark down was the result of errors by the Chief Financial Officer of the company in which the Fund had invested, but that, after further review, PCM's investment was not in any danger.

22.     On or about March 2, 2012, the fund suffered its third mark down. As a result of this mark down, the value of PCM's investment was reduced to approximately fifty cents on the dollar. Defendants, again in response to PCM's inquiries and request for assurances, blamed this latest mark down on errors by, *inter alia*, the Chief Executive Officer and Chief Financial Officer, bad software, and errors by an outside accounting firm which Defendants allegedly only recently discovered.

## **PCM Makes A Proper Redemption Request**

23.     In light of the mark downs, liquidity problems, and other concerns about its investment in the Fund, on or about February 29, 2012, PCM made a written Redemption Request with respect to all of its capital accounts in the Fund. The same day, Eduardo Quijano, an employee of the Fund, acknowledged receipt of PCM's Redemption Request on behalf of all Defendants in an e-mail to Caleb Sevian, PCM's Chief Investment Officer.

24.     Subsequent to receipt of PCM's Redemption Request, Defendants failed to advise PCM of Defendants' intended course of action to comply with the Redemption Request. On March 5, 2012, Caleb Sevian sent an e-mail to Andre Hakkak, Global Advisors' Managing Partner, asking "Can you please let me know what your plan is to pay Persistent Capital Management" in response to the Redemption Request. Instead of responding with payment

information, Defendants advised PCM on March 6, 2012 that Defendants were considering several restructuring plans which were intended to impact liquidity.

25. Still lacking any formal response from Defendants on how they planned to honor PCM's Redemption Request, PCM, on March 13, 2012 and through counsel, made a formal demand for the immediate return of all of PCM's capital accounts and otherwise demanded strict compliance with the Redemption Request and the terms and conditions of the Side Letter Agreement.

26. On or about March 28, 2012, Jeff Lisle, Chief Operating Officer of Global Advisors, sent an e-mail to PCM (a) acknowledging receipt of PCM's March 13, 2012 demand letter; and (b) proposing alternatives to PCM's February 29, 2012 Redemption Request by suggesting discussions involving "Current portfolio holdings", "Liquidity of the portfolio" and "Payment timing."

27. On or about April 13, 2012, Defendants sent PCM a Liquidity Proposal Letter ("LPL"). The LPL warned that unless PCM agreed to Defendants' proposal, the Fund may have "to take [] defensive action such as suspending redemptions, invoking the gate, creating side pockets or taking other similar actions in response to" PCM's Redemption Request.

28. The LPL set forth terms whereby instead of receiving its entire position in the Fund in accordance with the plain language of the Side Letter, PCM would receive (a) $1,000,000 at some indeterminate time in the future based on the maturity date of Defendants' investment in the Anderson Plan, LLC; and (b) the remaining balance of PCM's funds after the maturity date of Defendants' investment in Italkitchen International, Inc. Both the Anderson Plan, LLC and Italkitchen International, Inc. investments had maturity dates on or after

August 31, 2012 "although it is possible that such Maturity Date[s] may be altered or extended." As an express condition of Defendants' LPL, PCM will "remain[] a Shareholder in the Fund until redemptions are effected over time and, therefore, [PCM] bears full profit/loss risk as to the Net Asset Value as to the amount of each such investment, as reduced by redemptions already effected on each successive Redemption Date."

29. PCM has requested detailed financial information for the Fund from Defendants in order to independently ascertain the liquidity of the Fund.

30. Defendants have not provided reliable financial information.

31. On or about May 23, 2012, PCM received notice of yet another mark down of the Fund, down to forty cents on the dollar.

32. PCM timely rejected Defendants' LPL as an alternative solution to payment pursuant to PCM's Redemption Request and has insisted upon payment, in cash, of its entire stake in the Fund in accordance with the terms of the Side Letter Agreement.

33. Defendants have failed to provide PCM, within the sixty day period required pursuant to Section 5(d) of the Side Letter Agreement, "confirmation that [they will pay PCM] the full amount of its investment", and have failed to provide PCM with "an alternative solution" that is acceptable to PCM "in its discretion."

34. Defendants have failed to pay PCM the full amount owed to PCM within 150 days of PCM's demand for payment pursuant to Section 5(d) of the Side Letter Agreement. To the contrary, Defendants have given every indication that they will not pay PCM all of the money owed in accordance with the Side Letter Agreement.

**The Fund's Imminent Liquidity Problems And Irreparable Harm To PCM**

35. On or about March or April 2012, PCM was told by Defendants that the Fund may be placed into bankruptcy as a way to restructure the outstanding debt of the Fund.

36. On or about May 23, 2012, PCM was informed by Defendants that the outside auditors cannot provide a proper valuation of the Fund's assets and that there is no current way to get the liquidity out of the Fund.

37. On or about May 23, 2012, PCM was informed by Defendants that Defendants were considering ways to wind down and close the Fund.

38. Based on the foregoing, PCM reasonably believes that there may be no assets left in the Fund with which to pay its Redemption Request either now or at the natural conclusion of this litigation.

## COUNT I
## BREACH OF CONTRACT

39. Plaintiff incorporates by reference paragraphs 1 through 38 as if fully set forth herein.

40. A valid and binding contract, comprised of the Side Letter Agreement and other contemporaneously created documents, exists among PCM, Fund, Global Advisors, and Partners.

41. PCM has satisfied all conditions precedent under the Side Letter Agreement and other contemporaneously created documents for Defendants to pay PCM, in full, pursuant to PCM's February 29, 2012 Redemption Request.

42. Fund, Global Advisors, and Partners breached the Side Letter Agreement by, *inter alia*, refusing to honor PCM's February 29, 2012 Redemption Request per the plain language of the Side Letter Agreement.

43. PCM has been damaged in an amount to be proven at trial.

44. In addition to traditional breach of contract damages, PCM is also entitled to be reimbursed for its "expenses, attorney fees, and costs" associated with filing and litigating this matter, pursuant to Section 5(e) of the Side Letter Agreement.

45. The Fund's admittedly precarious financial condition has significantly increased the likelihood it will be unable to satisfy any judgment ultimately rendered by this court.  As a result, PCM requests that the Court temporarily and preliminarily enjoin the Fund from transferring any assets and order the Fund to place a suitable sum into the registry of the Court to preserve the Court's ability to render a meaningful decision on the merits of this case and to prevent Defendants from dissipating the ever diminishing assets of the Fund for other purposes.

## COUNT II
## DECLARATORY JUDGMENT

46. Plaintiff incorporates by reference paragraphs 1 through 45 as if fully set forth herein.

47. Under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. and Fed. R. Civ. P. 57, this Court may declare the respective rights, duties and other legal relations of the parties, including whether Defendants have any contractual indemnification obligations to PCM arising from Section 5(e) of the Side Letter Agreement.

48. There exists an actual justiciable controversy between the parties regarding these issues.

49. This Court should enter its judgment declaring that Defendants have contractual indemnification obligations to make PCM whole for all losses, damages, liabilities, claims, lawsuits, expenses, attorneys' fees and costs arising from Section 5(e) and as a result of Defendants' breach of Sections 1 and 5 of the Side Letter Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Persistent Capital Management, LLC prays that the Court:

a) Enter judgment that Defendants White Oak Strategic Fund II, L.P., White Oak Global Advisors, LLC, and White Oak Partners, LLC breached their contract with Persistent Capital Management, LLC;

b) Award Plaintiff Persistent Capital Management, LLC compensatory and other damages against Defendants White Oak Strategic Fund II, L.P., White Oak Global Advisors, LLC, and White Oak Partners, LLC jointly and severally, for all damages sustained as a result of Defendants' breach of contract, in an amount to be proven at trial;

c) Declare that Defendants have contractual indemnification obligations to make PCM whole for all losses, damages, liabilities, claims, lawsuits, expenses, attorneys' fees and costs pursuant to Section 5(e) and as a result of Defendants' breach of Sections 1 and 5 of the Side Letter Agreement.

d) Enter appropriate temporary, preliminary, and permanent injunctive relief enjoining Defendants White Oak Strategic Fund II, L.P., White Oak Global Advisors, LLC, and White Oak Partners, LLC from dissipating their assets pending a resolution of this case;

e) Award Plaintiff Persistent Capital Management, LLC its attorneys' fees, costs, and expenses incurred in this action; and

f) Award Plaintiff Persistent Capital Management, LLC such other legal or equitable relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 25th day of October, 2012.

JACKSON KELLY PLLC

*s/ William T. Slamkowski*
William T. Slamkowski, #23836
1099 18th Street, Suite 2150
Denver, Colorado 80202
Telephone: 303-390-0003
Fax: 303-390-0177
wslamkowski@jacksonkelly.com
*Attorneys for Plaintiff Persistent Capital Management, LLC*